STATE of California, et al., Plaintiffs,

v.

**UNITED STATES BUREAU OF LAND MANAGEMENT, et al., Defendants.**

**Sierra Club, et al., Plaintiffs,**

v.

**Ryan Zinke, et al., Defendants.**

**Related Case Nos. 17–cv–03804–EDL, 17–cv–3885–EDL**

United States District Court, N.D. California.

Signed 10/04/2017

George Matthew Torgun, Office of the Attorney General, Oakland, CA, Joel Minor, Robin L. Cooley, Denver, CO, Stacey P. Geis, San Francisco, CA, for Plaintiffs.

Clare Marie Boronow U.S. Department of Justice Denver, CO, for Defendants.

### ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

ELIZABETH D. LAPORTE, United States Magistrate Judge

The State of California, together with the State of New Mexico, and a coalition of seventeen conservation and tribal citizens groups, brought suit against the Bureau of Land Management (the "Bureau"), Secretary of the Department of the Interior Ryan Zinke, and Acting Assistant Secretary for Land and Minerals Management, Department of the Interior Katharine S. MacGregor (collectively, "Defendants"), alleging that Defendants violated the Administrative Procedures Act ("APA") when the Bureau published a notice in the Federal Register postponing the compliance dates for certain sections of the Waste Prevention, Production Subject to Royal-

ties, and Resource Conservation Rule after the rule's effective date had already passed. Before the Court are Plaintiffs' motions for summary judgment. For the following reasons, the Court GRANTS both motions.

## I. BACKGROUND

On November 18, 2016, the Bureau, an agency within the U.S. Department of the Interior, issued the Waste Prevention, Production Subject to Royalties, and Resource Conservation Rule (the "Rule"). See 81 Fed. Reg. 83,008. The Rule's purpose was to "reduce waste of natural gas from venting, flaring, and leaks during oil and natural gas production activities on onshore Federal and Indian (other than Osage Tribe) leases ... [and] also clarify when produced gas lost through venting, flaring, or leaks is subject to royalties, and when oil and gas production may be used royalty-free on-site." Id. The Rule was promulgated to replace the then-existing regulations related to venting, flaring, and royalty-free use of gas contained in the 1979 Notice to Lessees and Operators of Onshore Federal and Indian Oil and Gas Leases, Royalty or Compensation for Oil and Gas Lost (NTL–4A). Id. The Rule's effective date was January 17, 2017. Id.

The Bureau began developing the Rule in 2014 in response to reviews from the Government Accountability Office and the Department of the Interior's Office of the Inspector General which concluded that the Bureau's then-existing regulations regarding waste and royalties were "insufficient and outdated." Id. at 83,009–10. The regulations in place in 2014 had not been revisited in at least three decades. Id. at 83,008. After receiving input from various stakeholders and the public, the Bureau released its proposed rule in February 2016. See 81 Fed. Reg. 6,616 (Feb. 8, 2016)

(the "Proposed Rule"). To assist in gathering stakeholder comment before publishing the Proposed Rule, the Bureau conducted a series of forums in Colorado, New Mexico, North Dakota, and Washington, D.C., and held numerous meetings and calls with state representatives, individual companies, trade associations, and non-governmental organizations. Id. at 6,617. The Bureau received approximately 330,000 public comments on the Proposed Rule. See 81 Fed. Reg. 83,021.

At the time the Bureau finalized the Rule in November 2016, two industry groups and the States of Wyoming and Montana (later joined by North Dakota and Texas as intervenors) filed legal challenges to the validity of the Rule in federal court in Wyoming. See Western Energy Alliance et al. v. Secretary of the U.S. Dep't of the Interior et al., Case No. 16–cv–00280–SWS (D. Wyo. filed Nov. 15, 2016); State of Wyoming et al. v. United States Dep't of the Interior et al., Case No. 16–cv–00285–SWS (D. Wyo. filed Nov. 18, 2016). They alleged that the Bureau did not have statutory authority to regulate air pollution and that the Rule was arbitrary and capricious.[1] The plaintiffs moved for entry of a preliminary injunction to prevent the Rule from going into effect, which the court denied on January 16, 2017. See State of Wyoming et al. v. United States Dep't of the Interior et al., 2017 WL 161428 (D. Wyo. Jan. 16, 2017).

On January 17, 2017, the Rule went into effect. Approximately two months later, on March 28, 2017, the President issued Executive Order No. 13783, which instructed each executive agency to review all agency actions to identify those that:

potentially burden the development or use of domestically produced energy resources and appropriately suspend, revise, or rescind those that unduly bur-

---

1. All Plaintiffs to this case, with the exception of Fort Berthold Protectors of Water and

Earth Rights, intervened in the two cases in the District of Wyoming.

den the development of domestic energy resources beyond the degree necessary to protect the public interest or otherwise comply with the law.

82 Fed. Reg. 16,093. On March 29, 2017, Secretary Zinke issued Secretarial Order No. 3349 to implement the executive order as it pertains to the regulatory actions of the Department of the Interior. See Secretarial Order No. 3349, available at https://www.doi.gov/sites/doi.gov/files/uploads/so_3349_-american_energy_independence.pdf.

On June 15, 2017, the Bureau issued a notice in the Federal Register that it was postponing the compliance dates for certain sections of the Rule. See Waste Prevention, Production Subject to Royalties, and Resource Conservation; Postponement of Certain Compliance Dates, 82 Fed. Reg. 27,430 (the "Postponement Notice"). The postponed sections of the Rule were subject to a compliance date of January 17, 2018. Id. The Postponement Notice invoked Section 705 of the APA and concluded that "justice requires [the Bureau] to postpone the future compliance dates for [certain] sections of the Rule" in light of "the substantial cost that complying with these requirements poses to operators ... and the uncertain future these requirements face in light of the pending litigation and administrative review of the Rule." Id. at 27,431. The "pending litigation" referred to the legal challenges in the District of Wyoming. Id. The Postponement Notice stated that the Bureau interpreted the January 17, 2018 compliance date for these sections of the Rule to be "within the meaning of the term 'effective date' as that term is used in Section 705 of the APA." Id. It further explained that the Bureau "believes the [Rule] was properly promulgated," but determined that "[p]ostponing these compliance dates will help preserve the regulatory status quo while

the litigation is pending and the Department reviews and reconsiders the Rule." Id. The Postponement Notice did not apply to provisions of the Rule with compliance dates that had already passed. Id. It concluded by noting that the Bureau "intend[ed] to conduct notice-and-comment rulemaking to suspend or extend the compliance dates of those sections affected by the Rule." Id.

In a status report filed in the District of Wyoming litigation on September 1, 2017, the Bureau stated that it has drafted a proposed rule to suspend certain provisions of the Rule that were affected by the Postponement Notice and that proposed notice is currently under review by the Office of Information and Regulatory Affairs in the Office of Management and Budget before it is published for comment. See Western Energy Alliance et al. v. Secretary of the U.S. Dep't of the Interior et al., Case No. 16–cv–00280–SWS, Dk. No. 131; State of Wyoming et al. v. United States Dep't of the Interior et al., Case No. 16–cv–00285–SWS, Dkt. No. 136. According to the same status report, the Bureau is also developing a proposed rule to revise the Rule pursuant to Executive Order No. 13783. Id.

## II. PROCEDURAL HISTORY

Plaintiffs the State of California and the State of New Mexico filed suit on July 5, 2017, alleging that the decision by Defendants to postpone certain compliance dates of the Rule violated the APA. On July 12, 2017, the Court granted Plaintiffs' unopposed motion to relate this case to another case pending before this Court, Sierra Club et al. v. Zinke et al., Case No. 17–cv–03885–EDL, which was filed by seventeen conservation and tribal organizations (the "Conservation and Tribal Citizen Groups" or the "Groups")[2] on July 10, 2017.

2. The organizations that comprise the Conservation and Citizen Tribal Groups are: Sierra

Club, Center for Biological Diversity, Environmental Defense Fund, National Wildlife

Since the filing of these lawsuits, the Court has granted motions to intervene by the State of North Dakota, the Independent Petroleum Association of America, and the Western Energy Alliance (together, the "Intervenors"). Plaintiffs and Defendants did not oppose the Intervenors' motions, so long as their intervention was subject to certain conditions. Those conditions were that Intervenors: (1) file joint briefs and abide by all existing schedules in the litigation, including the stipulated briefing schedule on the motions for summary judgment; (2) not raise new claims or otherwise expand the litigation; and (3) abide by the same constraints applicable to parties in any APA case, in which judicial review of the challenged agency decision is generally limited to the agency's administrative record. Intervenors either expressly agreed to these conditions (State of North Dakota) or expressly agreed to some conditions and did not object to others (Independent Petroleum Association of America and the Western Energy Alliance). The Court concluded that the proposed conditions were reasonable and necessary in the interests of judicial economy, sound case management, and avoiding undue delay, and granted the motions to intervene subject to those conditions.

On July 26, 2017, the State of California and the State of New Mexico filed a motion for summary judgment in State of California et al. v. U.S. Bureau of Land Management et al., Case No. 17–cv–03804–EDL. The next day, on July 27, 2017, the Conservation and Tribal Citizen Groups filed a motion for summary judgment in Sierra Club et al. v. Zinke et al., Case No. 17–cv–03885–EDL. Defendants opposed the motions, and Intervenors joined in Defendants' opposition briefs. Intervenors have not filed separate motions for summary judgment or oppositions to Plaintiffs' motions.

On July 26, 2017, Defendants filed a motion to transfer these cases to the United States District Court for the District of Wyoming. As noted above, Defendants are currently defending a challenge to the validity of the Rule before that court. The States of California and New Mexico and, separately, the Conservation and Trial Citizens Groups filed opposition briefs to the motion to transfer on August 9, 2017. The parties agreed that the motion to transfer was suitable for decision without a hearing. On August 10, 2017, Defendants moved to stay briefing and the hearing on Plaintiffs' motions for summary judgment in both cases on the grounds that the Court should first resolve Defendants' motion to transfer the cases to the District of Wyoming. Plaintiffs opposed the motion. The Court denied Defendants' motion to stay on August 23, 2017, concluding that a stay would not meaningfully conserve judicial resources and that Plaintiffs had shown more than a fair possibility of harm due to the proposed stay, while Defendants had not established "a clear case of hardship or inequity" required for a stay. On September 7, 2017, the Court denied the motion to transfer, concluding that, among other reasons, there were no overlapping factual or legal issues that warranted overriding Plaintiffs' choice of forum. Case No. 17–cv–3804, Dkt. No. 73; Case No. 17–cv–3885, Dkt. No. 62.

Upon reviewing inquiries from numerous groups seeking to file amicus briefs regarding Plaintiffs' motions for summary

Federation, Natural Resources Defense Council, The Wilderness Society, Citizens for a Healthy Community, Dine Citizens Against Ruining Our Environment, Earthworks, Environmental Law and Policy Center, Fort Berthold Protectors of Water and Earth Rights,

Montana Environmental Information Center, San Juan Citizens Alliance, Western Organization of Resource Councils, Wilderness Workshop, WildEarth Guardians, and Wyoming Outdoor Council.

judgment, the Court issued an order permitting interested parties to file administrative motions for leave to file an amicus brief by September 6, 2017. Subsequently, the Court granted three motions for leave to file amicus briefs by the States of Washington, Oregon, Maryland, and New York; a coalition of the National Association of Home Builders, American Fuel & Petrochemical Manufacturers, American Petroleum Institute, and National Mining Association; and the Institute for Policy Integrity at New York University.

## III. LEGAL STANDARD

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it. the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250, 106 S.Ct. 2505. If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323, 106 S.Ct. 2548.

## IV. DISCUSSION

### A. Conservation and Tribal Citizen Groups' Standing

■ The Conservation and Tribal Citizen Groups briefed their standing to bring their lawsuit under the doctrine of associational standing. Defendants have not opposed the Conservation and Trial Citizens Groups' motion for summary judgment for lack of standing.

■ Under the doctrine of associational standing, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ The Groups' individual members meet the standing requirements in their own right. To do so, they must show that the individual members have: "(1) suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citation omitted). Many of their members live in states or are members of tribes that receive royal benefits that fund many important public services, such as education and infrastructure, and their governments will receive lower royalty payments due to the Postponement Notice. See Nat'l Wildlife Fed'n v. Burford, 871 F.2d 849, 853–54 (9th Cir. 1989). Other members own tribal mineral rights and will also receive lower royalty payments. Further, many of their members live and work on or near public and tribal lands that are impacted by oil and gas drilling and the production and venting, flaring, and leaking associated with that drilling. As a result of the postponement of the Rule's regulations to reduce waste and curb emissions, the members' use and enjoyment of these lands will be diminished, including because of detrimental health impacts that some members have already experienced and the aesthetic harm that will arise from venting, flaring, and leaking practices. See Hall v. Norton, 266 F.3d 969, 976 (9th Cir. 2001). Finally, their members suffered a procedural injury when the Postponement Notice was issued without the opportunity for public comment. See Wildearth Guardians v. U.S. Dep't of Ag., 795 F.3d 1148, 1154 (9th Cir. 2015); Citizens for Better Forestry v. U.S. Dep't of Ag., 341 F.3d 961, 970 (9th Cir. 2003). At the same time, their members' individual participation is not necessary.

As to the interests being germane, the Groups have submitted declarations affirming that "reducing waste and air and climate pollution from oil and gas development on public lands is central to the Conservation and Tribal Citizen Groups' institutional missions." Groups' Mot. at 20; Ex. 1, Standing Decls. at 1, 75, 90–91, 102, 106, 119, 128, 136. The Groups were also actively involved in the development of the Rule and defending the Rule's validity in the District of Wyoming litigation. See Groups' Mot., Ex. 1. As to the third element, as the issues raised here are purely legal and do not require any involvement of the individual members or their "unique facts" to resolve the issues raised or grant the relief sought. See Int'l Union, United Auto, Aerospace & Ag. Implement Workers of Am. v. Brock, 477 U.S. 274, 287–88, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

The injuries discussed above are traceable to the postponement of the Rule because the postponed provisions would have reduced waste of royalty-bearing resources and reduce emissions of air pollutants and greenhouse gases. A ruling in the Groups' favor vacating the Postponement Notice and directing the Bureau to implement the Rule would redress their members' injuries.

Accordingly, the Groups have associational standing to bring this lawsuit.

## B. Timing of Motions

■ Defendants contend that the Court should not reach the merits of Plaintiffs' motions for summary judgment because they are premature, having been filed before Defendants have answered the complaint, before the initial case management conferences, and before Defendants have filed an administrative record. They argue that Plaintiffs are seeking to evade the

APA's requirement that the court review an agency action based on the administrative record. See 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party[.]").

These motions are timely under Rule 56 and the Court is fully able to resolve the motions at this phase of the litigation because they are limited to legal issues that do not depend on the administrative record, aside from the few key documents the parties cited in their motions, which the Defendants do not dispute are subject to judicial notice.[3] See Wagner v. Spire Vision, 2014 WL 889483, at *4 (N.D. Cal. Mar. 3, 2014) (explaining that motions for summary judgment are appropriate for deciding purely legal issues); Fed. R. Civ. P. 56 ("a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"). The administrative record would not be helpful to decide these issues and is not required. See People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Ag., 194 F.Supp.3d 404, 409 (E.D.N.C. 2016); Animal Legal Def. Fund v. U.S. Dep't of Ag., 789 F.3d 1206, 1224 n.13 (11th Cir. 2015). Defendants have not identified any documents that are not currently before the Court that are required to resolve any purported factual issues. Nor have Defendants asked for relief under Rule 56(d) of the Federal Rules of Civil Procedure allowing nonmoving parties that oppose summary judgment to request a delay in hearing the motion because they need more time to enable them to present facts essential to justify their opposition.[4] In short, there is no reason to wait for the administrative record to resolve the legal issues that are currently before the Court.

## C. Standard of Review

 As the parties are aware, this Court recently decided a case against the Department of the Interior that raised many of the same issues presented in this case. See Becerra v. U.S. Dep't of Interior, Case No. 17-cv-02376-EDL, 2017 WL 3891678 (N.D. Cal. Aug. 30, 2017). With respect to the standard of review that the Court must apply to Plaintiffs' challenge, Defendants point out, as they did in Becerra, that the APA may set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law," 5 U.S.C. § 706. Yet Defendants focus only on the standard of review under the first clause regarding arbitrary action and abuse of discretion. Defendants are correct that in general review under that prong of the statute "is narrow, and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In that context, an agency's decision can be set aside "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Earth Island Inst. v. U.S. Forest Serv., 697 F.3d 1010, 1013 (9th Cir. 2012) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).

---

3. Specifically, Plaintiffs the State of California and the State of New Mexico have requested judicial notice of five documents, including the Proposed Rule, the Rule, and the Postponement Notice.

4. Indeed, Defendants stipulated to a briefing schedule for the summary judgment motions that did not provide for the filing of an administrative record.

As this Court recognized in Becerra, however, that standard is not applicable to actions short of statutory right or taken in violation of legally required procedures, which is the threshold issue that Plaintiffs raise here. To the contrary, section 706 provides that, "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The "arbitrary and capricious" standard forms a separate basis to set aside agency action, 5 U.S.C. § 706(2)(A), and it is that standard which Motor Vehicle Mfs. characterized as narrow. 463 U.S. at 42–43, 103 S.Ct. 2856. Similarly, Defendants rely on a portion of Earth Island Institute in which the court cites Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) for exposition of the arbitrary and capricious standard. See Earth Island Institute, 697 F.3d at 1013; see also Price v. Stevedoring Servs. of Am., Inc., 697 F.3d at 825–26 (holding that litigating position of Director of Office of Workers' Compensation Programs in interpreting Longshore Act was not entitled to Chevron deference where Director did not adopt his litigating positions through any relatively formal administrative procedure, but through internal decision-making not open to public comment or determination, and there was no other indication that Congress intended Director's litigating positions to carry force of law).

■ As Plaintiffs persuasively argue, the Bureau's decision to postpone the Rule is not entitled to deference. Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) held that "the court must first give effect to the unambiguously expressed intent of Congress" when reviewing an agency's interpretation of a statute. Under United States v. Mead Corp., 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) and Price v. Steve-

doring Servs. of Am., Inc., 697 F.3d 820, 826 (9th Cir. 2012), Chevron deference is warranted only when an agency is exercising authority delegated to it by Congress to administer a particular statute, and that Congress has not delegated the Bureau authority to administer the APA. By contrast, Motor Vehicle Mfs. addressed agency action delegated to that agency by the Motor Vehicle Safety Act. 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443. Similarly, in Earth Island Institute, the Ninth Circuit held that the Forest Service is entitled to deference as to its interpretation of its own forest plans unless that interpretation is plainly inconsistent with the plan. 697 F.3d at 1013.

■ The underlying dispute here, however, centers upon the Bureau's application of section 705 of the APA. Under Mead Corp., "administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." Mead, 533 U.S. at 226–27, 121 S.Ct. 2164.

Defendants have not pointed to any authority delegating the Bureau authority to interpret section 705 of the APA. As in Becerra, Defendants have failed to show that the Bureau's interpretation of section 705 of the APA is entitled to deference.

### D. The Bureau's Invocation of Section 705 of the APA

■ On June 15, 2017, the Bureau relied on Section 705 of the APA to postpone the compliance date for certain sections of the Rule. Section 705 provides:

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may

be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

Plaintiffs argue that postponing implementation of the Rule after it has already gone into effect runs afoul of the plain language of Section 705. Plaintiffs point to the only decision on this issue, Safety–Kleen Corp. v. Envtl. Prot. Agency, 1996 U.S. App. LEXIS, at *2 (D.C. Cir. Jan. 19, 1996), which held that Section 705 does not permit an agency to suspend a promulgated rule without notice and comment.

In Becerra, as in this case, Defendants contended that the term "effective date" in Section 705 encompasses effective dates and compliance dates. This is also the reasoning set forth in the Postponement Notice itself. See 82 Fed. Reg. 27,430. To support their position, Defendants raise several arguments. Defendants argue that in many instances, an agency will not have time to exercise its Section 705 authority after a lawsuit is filed and before the challenged rule's stated effective date, thus rendering the authority provided by the statute of little use. Defendants also argue that "compliance dates" are the "dates with teeth," and Section 705 is meant to allow an agency to maintain the status quo pending judicial review.

 In Becerra, the Court rejected all of Defendants' arguments. See Becerra, 2017 WL 3891678, at *8–11. The plain language of the statute authorizes postponement of the "effective date," not "compliance dates." 5 U.S.C. § 705. As the Court of Appeals for the District of Columbia explained when confronting a similar argument about Section 705:

> Upon consideration of the motion of intervenors to vacate administrative stay, the responses thereto and the reply, it is ORDERED that the motion be granted. Respondent improperly justified the stay based on 5 U.S.C. § 705 (1994). That statute permits an agency to postpone the effective date of a not yet effective rule, pending judicial review. It does not permit the agency to suspend without notice and comment a promulgated rule, as respondent has attempted to do here. If the agency determines the rule is invalid, it may be able to take advantage of the good cause exception, 5 U.S.C. § 553(b).

Safety–Kleen Corp., 1996 U.S. App. LEXIS, at *2–3.

This reasoning is equally applicable here. Effective and compliance dates have distinct meanings. See Silverman v. Eastrich Multiple Inv'r Fund, L.P., 51 F.3d 28, 31 (3d Cir. 1995) ("The mandatory compliance date should not be misconstrued as the effective date of the revisions."); Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency, 683 F.2d 752, 762 (3d Cir. 1982) (stating that an effective date is "an essential part of any rule: without an effective date, the agency statement could have no future effect, and could not serve to implement, interpret, or prescribe law or policy") (internal quotation marks omitted).

Defendants argue that this case is distinguishable from Becerra for two main reasons. First, they contend that the Bureau did not postpone the entire Rule at issue here, whereas the Department of the Interior had postponed the entire rule that was the subject of the litigation in Becerra. Defendant argue that this distinction is important because the Postponement Notice preserved the status quo by leaving in place the parts of the Rule that were

effective as of January 17, 2017, while postponing other parts of the Rule that did not require compliance until one year later on January 17, 2018. Under Defendants' interpretation, the parts of the Rule with compliance dates of January 17, 2018 were not yet "effective" at the time that the Bureau issued the Postponement Notice. Thus, because operators in the oil and gas industry were no longer required to prepare for and then achieve compliance at a later date with those parts of the Rule, Defendants contend that the Postponement Notice maintained the status quo because compliance was not mandatory until January 17, 2018.

This reasoning is circular at best. It tacitly acknowledges that the Postponement Notice did not maintain the status quo for those parts of the Rule with a compliance date of January 17, 2018 because the year leading up to that date was intended to give operators in the oil and gas industry the time they needed to adjust their operations to come into compliance. At the time that the Bureau issued the Postponement Notice on June 15, 2017, the regulated parties either had to start preparing or continue preparing to make the necessary changes in light of the Rule's impending compliance date. Similar to the regulation at issue in Becerra, the Rule imposed compliance obligations starting on its effective date of January 17, 2017 "that increased over time but did not abruptly commence" on January 17, 2018. Becerra, 2017 WL 3891678, at *8. Indeed, as Intervenor Western Energy Alliance stated at oral argument, preparing to meet the January 17, 2018 compliance date could take operators up to six months, depending on the size of the operation. For example, Intervenor Western Energy Alliance stated that large operators needed to begin inspections during the summer of 2017 to complete the new leak prevention and repair obligations by the January 17, 2018 compliance date. While smaller operators would need less time to complete those tasks, Intervenor Western Energy Alliance stated that all operators would need some lead-up time to achieve compliance by January 17, 2018.

Second, Defendants argue that the Rule at issue here, unlike the one in Becerra, specifically referenced compliance dates in the regulation that were meant to phase in over time, which thereby established at least two different "effective dates" under the Rule. Defendants analogize the one-year period between the January 17, 2017 effective date and the January 17, 2018 compliance date with the period between publication of a final rule and its effective date. During the time between publication and its effective date, Section 705 expressly permits the agency to invoke its Section 705 authority pending judicial review. According to Defendants, by analogy, the agency should also be able to use Section 705 after the official effective date but before the January 17, 2018 compliance date comes due because the compliance date is functionally equivalent to a second effective date. Not only is this argument contrary to the plain language of the statute, but it collapses the clear statutory distinction between the two periods before and after a rule takes effect.

The remaining arguments that Defendants repeat from Becerra are likewise unavailing here. With respect to Defendants' claim that limiting Section 705 to situations where the effective date of a regulation has not passed would unduly hamper its ability to use this authority, Plaintiffs persuasively argue that the challenges to the Rule in the District of Wyoming prove the fallacy of this argument. There, the industry groups moved quickly (in one case, even before the final Rule was published in the Federal Register) to initiate litigation challenging the validity of the Rule and seek a preliminary injunc-

tion. In response, the Bureau appeared in those actions to defend the Rule and, ultimately, the court declined to issue a preliminary injunction before the effective date passed. As Congress envisioned, the Bureau had ample time between the filing of the District of Wyoming lawsuits and the Rule's effective date to issue a stay pursuant to Section 705, but it chose not to do so.

Defendants' policy argument that the Court should construe Section 705 to include "compliance dates" because Section 705 is meant to allow an agency to maintain the status quo pending judicial review is equally unpersuasive. Indeed, Defendants' position undercuts regulatory predictability and consistency. See Price, 697 F.3d at 830 (formal rulemaking exists in order to provide "notice and predictability to regulate parties"). After years of developing the Rule and working with the public and industry stakeholders, the Bureau's suspension of the Rule five months after it went into effect plainly did not "maintain the status quo." To the contrary, it belatedly disrupted it. Regulated entities with large operations had already needed to make concrete preparations after the Rule had not only become final but had actually gone into effect. The uncertainty that can arise from this kind of sudden agency reversal of course is illustrated by its impact on the regulated entities here. As Intervenor Western Energy Alliance explained to the Court at oral argument, many of the companies it represents within the gas and energy industry stopped moving toward compliance with the Rule based, in significant part, on Defendants' issuance of the Postponement Notice. In arguing against a remedy of vacatur (discussed more fully below), Intervenor Western Energy Alliance contended that some large regulated entities would be less likely to be able to meet the compliance deadline of January 17, 2018 because they relied on Defendants' postponement.

Finally, Defendants argue that the term "effective date" in Section 705 must be interpreted broadly based on its context in the overall scheme of the APA. Under their interpretation, the definition of effective date in Section 705 must be broader than the definition in Section 553(d) of the APA, which applies to rulemaking, because Section 705 applies more broadly to all agency action rather than just rulemaking. See 5 U.S.C. § 705 (allowing an agency to postpone "action taken by it"); 5 U.S.C. § 551(13) (defining agency action to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). Their argument is not persuasive. While Section 705 allows the postponement of the effective date of a broader range of agency actions than a complete rule, such as a part of a rule or a license, and would have allowed the agency lawfully to postpone certain parts of the Rule, rather than its entirety, had it done so before the effective date of January 17, 2017, that possibility does not alter the plain meaning of "effective date."

### E. APA's Notice-and-Comment Requirements

Plaintiffs also argue that Defendants violated the APA's notice-and-comment requirements by effectively repealing the Rule without engaging in the process for obtaining comment from the public. Sections 553(b) and (c) of the APA set forth the notice-and-comment requirements for agency "rule making." 5 U.S.C. § 553. "Rule making means agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). The retraction of a duly-promulgated regulation requires compliance with the APA's notice-and-comment procedures. See Envt'l Def. Fund, Inc. v. Gorsuch, 713 F.2d 802, 817 (D.C. Cir. 1983); Clean Air Council v. Pruitt, 862 F.3d 1, 6 (D.C. Cir. 2017);

Perez v. Mortg. Bankers Ass'n, —— U.S. ——, 135 S.Ct. 1199, 1206, 191 L.Ed.2d 186 (2015); F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009); Nat. Res. Def. Council v. Envtl. Prot. Agency, 683 F.2d 752, 761 (3d Cir. 1982).

 Defendants respond that Section 705 does not refer to notice-and-comment requirements. Without citing any authority, Defendants also argue that notice-and-comment would impede its ability to act swiftly to maintain the status quo, as Congress envisioned when it crafted the Section 705 authority. Defendants rely on Sierra Club v. Jackson, 833 F.Supp.2d 11, 28 (D.D.C. 2012), which held that the section 705 delay notice did not constitute substantive rulemaking. The Court has already rejected this argument in Becerra, explaining that in Sierra Club the agency properly invoked section 705 *before* the rule's effective date. Therefore, the postponement of the rule there was not effectively a repeal, unlike here. The APA does not permit an agency to

> guide a future rule through the rulemaking process, promulgate a final rule, and then effectively repeal it, simply by indefinitely postponing its operative date. The APA specifically provides that the repeal of a rule is rulemaking subject to rulemaking procedures.

Nat. Res. Def. Council, 683 F.2d at 762. By now only belatedly following the requisite notice-and-comment procedures to issue a proposed rule that postpones the compliance dates for six months after first trying to bypass those procedures, Defendants' actions speak louder than words, tacitly conceding that the Postponement Notice was improper.

 As the Court observed in Becerra, the policy underlying the statutory requirement of notice-and-comment is equally applicable to the repeal of regulations as to their adoption. See Consumer Energy Council of Am. v. Fed. Energy Regulatory Comm'n, 673 F.2d 425, 446 (D.C. Cir. 1982) ("The value of notice and comment prior to repeal of a final rule is that it ensures that an agency will not undo all that it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal.").

## F. Bureau's Justification under Section 705

 In addition to contending that Defendants exceeded their power under Section 705, Plaintiffs also argue that the Postponement Notice was unlawful because it was arbitrary and capricious and did not meet the additional statutory requirements of "pending litigation" and "justice so requires."

### 1. Reconsideration of the Rule

First, Plaintiffs argue that one of the Bureau's stated justifications for the Postponement Notice was to delay compliance while it "reviews and reconsiders the Rule." 82 Fed. Reg. 27,431. Citing Sierra Club, Plaintiffs argue that invoking Section 705 for this purpose was arbitrary and capricious because Section 705 is not applicable where "[t]he purpose and effect of the [Postponement] Notice plainly are to stay the rules pending reconsideration, not litigation." 833 F.Supp.2d at 33. Defendants respond that there is nothing in Section 705 that prohibits the Bureau from having two reasons for postponing a regulation (in this case, "pending judicial review" and agency reconsideration).

As in Sierra Club, however, Defendants have merely paid "lip service" to the pending judicial review in the District of Wyoming. See Sierra Club, 833 F.Supp.2d at 34. Rather than justify the Section 705 postponement based on the litigation in the District of Wyoming cases, the Postponement Notice reiterated that the Bureau

believed the Rule had been properly promulgated and merely stated, without any specificity, that "the petitioners have raised serious questions concerning the validity of certain provisions of the Rule." 82 Fed. Reg. 27,431. Furthermore, similar to the stay the defendants sought in Becerra, the Bureau requested and received a 90 day extension to the briefing schedule in the District of Wyoming litigation, relying on the Postponement Notice and future administrative review as justifications for the extension. These actions run counter to the Bureau's statement that pending judicial review in the District of Wyoming litigation was the true reason for the Postponement Notice. While there is no prohibition against having more than one justification for invoking Section 705, provided that one of them meets the statutory requirements, Defendants must be able to show that they properly invoked the statutorily required ground of "pending judicial review." Defendants have not done so here.

## 2. "Justice So Requires" and the Failure to Consider the Foregone Benefits

■ Alternatively, Plaintiffs argue that the Bureau's decision was arbitrary and capricious because it only took into account the costs to the oil and gas industry of complying with the Rule and completely ignored the benefits that would result from compliance. It is a fundamental principle of the APA that an agency's decision is arbitrary when it "entirely failed to consider an important aspect of the problem." Motor Vehicle Mfs., 463 U.S. at 43, 103 S.Ct. 2856. Although an agency is entitled to change its policy positions, it has an obligation to adequately explain the reason for the change and its rejection of its earlier factual findings. See Organized Vill. of Kake v. U.S. Dep't of Ag., 795 F.3d 956, 966–67 (9th Cir. 2015) (en banc) (citing FCC v. Fox Television Stations, Inc., 556

U.S. 502, 515–16, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009)).

Here, based on the rationale stated in the Postponement Notice, the Bureau entirely failed to consider the benefits of the Rule, such as decreased resource waste, air pollution, and enhanced public revenues. Defendants' argument that Section 705 "places no limitations on an agency's determination of what 'justice so requires,' " (Defs.' Opp. at 13), would render that language mere surplusage, contrary to a basic rule of statutory construction. If the words "justice so requires" are to mean anything, they must satisfy the fundamental understanding of justice: that it requires an impartial look at the balance struck between the two sides of the scale, as the iconic statue of the blindfolded goddess of justice holding the scales aloft depicts. Merely to look at only one side of the scales, whether solely the costs or solely the benefits, flunks this basic requirement. As the Supreme Court squarely held, an agency cannot ignore "an important aspect of the problem." Motor Vehicle Mfs., 463 U.S. at 43, 103 S.Ct. 2856. Without considering both the costs and the benefits of postponement of the compliance dates, the Bureau's decision failed to take this "important aspect" of the problem into account and was therefore arbitrary. Furthermore, Defendants' argument that they can ignore the benefits of the Rule because they do not materialize until 2018 is a self-fulfilling prophecy because, according to the agency's own cost-benefit analysis made in promulgating the Rule, those benefits will be reaped starting in January 2018 and outweigh the costs—unless the agency prevents compliance with that deadline as it sought to do through the unlawfully issued Postponement Notice.

Instead of taking into account the benefits of the Rule when issuing the Postponement Notice, Defendants premised

their action on the grounds that the costs were not justified because circumstances had changed between the time the Rule was developed and finalized and the time it was postponed in June 2017. Defendants contend that the relevant changed circumstances include the completely foreseeable and foreseen fact that the January 17, 2018 compliance deadline was becoming more urgent, as well as the District of Wyoming having "expressed misgivings with the Rule"—even though it denied the challengers' motion for a preliminary injunction—and the President issuing an executive order directing the executive agencies to re-evaluate regulations that affect the energy industry. For their part, Plaintiffs contend that the only thing that actually changed before issuance of the Postponement Notice was "the agency's position with respect to whether those costs are justified." (Grps' Opp. at 11).

New presidential administrations are entitled to change policy positions, but to meet the requirements of the APA they must give reasoned explanations for those changes and "address [the] prior factual findings" underpinning a prior regulatory regime. See Organized Vill. of Kake, 795 F.3d at 966. Significantly, Defendants have not argued that the Rule's promulgation was based on inaccurate facts or faulty cost-benefit studies. Indeed, in support of postponing the compliance date because of a new concern with the costs to the oil and gas industry, the Postponement Notice relied on precisely the same Regulatory Impact Analysis that it had previously relied upon to support adoption of the Rule and justify its costs, which showed that the

benefits substantially outweighed the costs. Thus, it supported the Postponement Notice by only considering one side of the equation. As the Supreme Court held, "a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." Fox Television Stations, 556 U.S. at 515–16, 129 S.Ct. 1800. Defendants have presented no "reasoned explanation" for the agency's action and "[i]t would be arbitrary or capricious to ignore such matters." Id.[5] Defendants' failure to consider the benefits of compliance with the provisions that were postponed, as evidenced by the face of the Postponement Notice, rendered their action arbitrary and capricious and in violation of the APA.

### 3. "Justice So Requires" and the Preliminary Injunction Test

Finally, Plaintiffs argue that the Bureau was required to apply the four-part preliminary injunction test to show that "justice so requires" postponing compliance under Section 705, which the Bureau did not reference or apply in the Postponement Notice. Plaintiffs rely on Sierra Club in which the court found that the EPA's invocation of Section 705 was arbitrary and capricious based on EPA's failure to apply the four-part preliminary injunction test. See Sierra Club, 833 F.Supp.2d at 30–31. As the court in Sierra Club noted, the legislative history of Section 705 provides some support for this interpretation:

> This Section permits either agencies or courts, if the proper showing be made, to maintain the status quo. ... The authority granted is equitable and should

**5.** While Defendants' failure to fully consider all important aspects of postponing the compliance deadlines when issuing the Postponement Notice was arbitrary and capricious, this result does not necessarily resolve the issue raised by *amicus* The Institute for Policy Integrity that Defendants were required to

support their change in policy with a full cost-benefit analysis. Because the Postponement Notice was arbitrary and capricious for its failure to consider the foregone benefits of compliance at all, the Court need not resolve this question.

be used by both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy.

*Id.* at 31 (quoting Administrative Procedure Act, Pub. L. 1944–46, S. Doc. 248 at 277 (1946) (describing the intent of 5 U.S.C. § 1009(d), the prior version of Section 705)). Sierra Club reasoned that there was nothing in the text of Section 705 or its legislative history that suggested that the standard for a stay pending judicial review differs between agencies and courts. Sierra Club, 833 F.Supp.2d at 30–31.

Defendants disagree that they were required to consider the four-part preliminary injunction test when issuing the Postponement Notice pursuant to Section 705 and that Sierra Club was wrongly decided. Defendants point out that the text of Section 705 requires neither a court nor an agency to make findings about the four preliminary injunction factors when issuing a Section 705 stay:

> When *an agency* finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, *the reviewing court*, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705 (emphasis added). They argue that the text of Section 705 only requires an agency to base its decision to implement a stay on a finding that "justice so requires," and that the next sentence, which references certain factors of the preliminary injunction test, only refers to court-issued stays. In response to the leg-

islative history noted by Plaintiffs and the court in Sierra Club, Defendants point to subsequent legislative history from 1946 that they argue more closely tracks the statutory language and supports their position that Section 705 does not require an agency to weigh the four factors of the preliminary injunction test when determining if "justice so requires":

> [Section 705] provides that any agency may itself postpone the effective date of its action pending judicial review, or, upon conditions and as may be necessary to prevent irreparable injury, reviewing courts may postpone the effective date of contested action or preserve the status quo pending conclusion of judicial review proceedings.

S. Doc. 248 at 369 (1946).

Finally, Defendants argue that requiring agencies to weigh the four factors of the preliminary injunction test is impractical. For instance, an agency would be required to find that a party who is challenging a regulation is likely to succeed on the merits, which would undermine the agency's litigation position and hinder its defense. Defendants claim that the test is particularly troubling in situations where an agency is reconsidering a regulation, as the Bureau is doing here, because it essentially forces an agency to admit error in order to provide relief to regulated parties pending judicial review and reconsideration, even though agencies can reconsider regulations for policy reasons without admitting error.

The Parties and *amici* vigorously contest whether Defendants were required to satisfy the four-factor preliminary injunction test when they relied upon Section 705 to postpone the compliance date under the justification that "justice so requires." The plain language of the statute leaves room to dispute whether such an analysis is required, and the legislative history pro-

vides limited and not entirely consistent evidence of Congress' intent. The statute is clear, however, that a postponement requires the agency to make a determination that "justice so requires." Because of the complete failure to consider the foregone benefits of compliance, Defendants have failed to meet the "justice so requires" requirement of Section 705. Therefore, the Court does not reach the issue of whether Defendants' action was arbitrary and capricious for their failure to utilize the preliminary injunction test.

## V. REMEDY

■ Having concluded that Defendants violated the APA when the Bureau issued the Postponement Notice, the Court must consider the appropriate remedy. Plaintiffs have requested declaratory relief and vacatur of the Postponement Notice.

■ Vacatur is the standard remedy for violation of the APA. See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs, 486 F.3d 638, 654 (9th Cir. 2007), rev'd on other grounds sub nom., Coeur Alaska v. Se. Alaska Conservation Council, 557 U.S. 261, 129 S.Ct. 2458, 174 L.Ed.2d 193 (2009); Klamath–Siskiyou Wildlands Center v. Nat'l Oceanic and Atmospheric Admin., 109 F.Supp.3d 1238, 1241 (N.D. Cal. 2015) (citations omitted). To determine whether to make an exception to the usual remedy of vacatur, the Court considers two factors: (1) "how serious the agency's errors are," and (2) "the disruptive consequences of an interim change that may itself be changed." See Cal. Cmtys. Against Toxics v. Envtl. Prot. Agency, 688 F.3d 989, 992 (9th Cir. 2012) (quoting Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).

■ As to the first factor, the Bureau's errors in illegally invoking Section 705 to issue the Postponement Notice and circumvent the APA's notice-and-comment requirements were serious. See Nat. Res. Defense Council v. Envtl. Prot. Agency, 489 F.3d 1364, 1374 (D.C. Cir. 2007) ("The agency's errors could not be more serious insofar as it acted unlawfully, which is more than sufficient reason to vacate the rules."). Courts generally only remand without vacatur when the errors are minor procedural mistakes, such as failing to publish certain documents in the electronic docket of a notice-and-comment rulemaking. See Cal. Cmtys., 688 F.3d at 992. Thus, this factor heavily favors vacating the Postponement Notice.

The second factor is the potential disruptive consequences that would arise from vacatur. Defendants argue that vacatur would require regulated entities to spend approximately $114 million dollars to achieve compliance. Requiring these entities to spend that much money is unnecessarily disruptive and inequitable, they contend, because the Bureau is planning to lawfully suspend the Rule and ultimately revise or rescind it. They also note that the court presiding over the District of Wyoming challenge to the Rule expects to issue its decision before the January 17, 2018 compliance date, which could mean that the Rule will be invalidated, even though the court denied a preliminary injunction in part based on plaintiffs in that case not having shown a sufficient likelihood of success at that time. Intervenor Western Energy Alliance also contends that some of its members relied on the Postponement Notice and the District of Wyoming litigation to defer compliance efforts, so it may well be impossible at this point for at least some of the larger-scale regulated entities to meet the January 17, 2018 compliance deadline.

Notably, the rare exceptions to vacatur involve irreparable and severe disruptive consequences that went far beyond the potential disruptive consequences that De-

fendants raise here. Thus, the Ninth Circuit declined to vacate illegally promulgated regulations where vacatur could result in the extinction of an already endangered species. See Idaho Farm Bureau Fed. v. Babbitt, 58 F.3d 1392, 1405–06 (9th Cir. 1995). And it denied vacatur that would have resulted in rolling blackouts affecting thousands, if not millions of people, more air pollution, and disastrous economic effects. See Cal. Comtys., 688 F.3d at 994.

By contrast, as Plaintiffs point out, vacating the Postponement Notice and reinstating the Rule is predicted to result in a net positive financial and environmental benefit, according to the agency's analysis, because compliance will reduce the waste of public resources, curb the emission of harmful environmental pollutants, increase royalty payments, and, for many of the new requirements relating to reducing the waste of valuable resources, pay for itself over time. Moreover, vacating the Postponement Notice would merely put the regulated parties back in the position of working toward compliance. If some of the regulated entities of the oil and gas industry will not be able to meet the January 17, 2018 compliance date because they suspended compliance efforts after the District of Wyoming denied the preliminary injunction and the Bureau issued the Postponement Notice, that is a problem to some extent of their own making and is not a sufficient reason for the Court to decline vacatur. This lawsuit by California and New Mexico has been on the public docket since July 5, only 20 days after the Bureau issued the Postponement Notice, and the related case was filed five days later. As evidenced by its trade association's intervention in this case, the oil and gas industry was well aware that the Postponement Notice was potentially vulnerable to invalidation. Moreover, denying the standard remedy of vacatur based on less severe disruptive consequences than those previously recognized as warranting keeping the unlawful regulation in place could be viewed as a free pass for agencies to exceed their statutory authority and ignore their legal obligations under the APA, making a mockery of the statute.

This is not like the situation in Becerra where the agency had already finalized a new rule and vacatur would only return the parties to the previous regulatory regime for a short one week period. Under those very unusual circumstances, vacating the illegal postponement of the regulation was not warranted. In this case, however, the Bureau has not yet promulgated a replacement for the Rule. Although the Bureau intends to engage in actual rulemaking to postpone the Rule's compliance dates and issue a proposed rule for public notice and comment, that proposal is still under review within the agency and by the Office of Management and Budget ("OMB"). Furthermore, once promulgated, Defendants acknowledged at oral argument that the Bureau would engage in a 30–day notice-and-comment period. Indeed, if the Bureau receives "significant" comments to the proposed rule, as seems likely given the numerous comments it originally received in favor of as well as against the Rule that it seeks to functionally suspend, it will need to provide written responses, which will take additional time. See Am. Mining Congress v. Envtl. Prot. Agency, 965 F.2d 759, 771 (9th Cir. 1992). After considering and responding to any significant comments, the agency must then draft the final rule and, most likely, seek approval of the rule from OMB. See Executive Order 12,866. After OMB has approved the agency's draft final rule, the agency must then publish the final rule in the Federal Register, and it will not become effective until at least 30 days after its publication. 5 U.S.C. § 553(d). At the hearing on Plaintiffs' motions, Defendants acknowledged that finalizing that new proposed rule would take at least two months.

Defendants have also informed the Court that they intend to propose another round of rulemaking to revise or rescind the Rule, but the Bureau is still drafting that proposed rule and it has not yet been circulated for review within the agency or OMB. Given the time-intensive steps required to move a draft rule forward to final publication and the additional period of 30 days before it comes effective, any such rule revising or rescinding the Rule is unlikely to go into effect for a number of months. In the end, there is no certainty that either proposed rulemaking will survive potential legal challenge, given the litigation history of this Rule. Thus, application of the general rule in favor of vacatur is appropriate here.

## VI. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motions for summary judgment and vacates the Postponement Notice.

**IT IS SO ORDERED.**