# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CALIFORNIA COMMUNITIES AGAINST
TOXICS, an unincorporated
association; COMMUNITIES FOR A
BETTER ENVIRONMENT, a California
non-profit organization,
                        *Petitioners,*

            v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LISA JACKSON,
Administrator, U.S. Environmental
Protection Agency; JARED
BLUMENFELD,
                        *Respondents,*

CPV SENTINEL LLC; SOUTH COAST
AIR QUALITY MANAGEMENT DISTRICT,
            *Respondents-intervenors.*

No. 11-71127

OPINION

On Petition for Review of a Final Rulemaking
of the United States Environmental Protection Agency

Argued and Submitted
June 5, 2012—Pasadena, California

Filed July 26, 2012

Before: Alex Kozinski, Chief Judge, Stephen S. Trott and
Sidney R. Thomas, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Angela Johnson Meszaros and Timothy R. Grabiel, Law Offices of Angela Johnson Meszaros, South Pasadena, California, for petitioner California Communities Against Toxics.

Shana Lazerow and Maya Golden-Krasner, Communities for a Better Environment, Oakland, California, for petitioner Communities for a Better Environment.

Ann Lyons, United States Environmental Protection Agency, Office of Regional Counsel, San Francisco, California; Scott Jordan, United States Environmental Protection Agency, Office of General Counsel, Washington, D.C.; Ignacia S. Moreno, Assistant Attorney General; and Amy J. Dona, Environmental Defense Section, Environment & Natural

Resources Division, United States Department of Justice, Washington, D.C., for respondents United States Environmental Protection Agency, Lisa Jackson and Jared Blumenfeld.

Michael J. Carroll and Joshua T. Bledsoe, Latham & Watkins LLP, Costa Mesa, California, for respondent-intervenor CPV Sentinel, LLC.

Kurt R. Wiese, Barbara Baird, Lauren B. Nevitt and Megan E. Lorenz, South Coast Air Quality Management District, Diamond Bar, California, for respondent-intervenor South Coast Air Quality Management District.

---

## OPINION

PER CURIAM:

Two environmental groups petition for review of a final rulemaking by the EPA. The groups and the EPA agree this case should be remanded, so the only dispute is whether vacatur is appropriate.

### Background

The Clean Air Act requires the EPA to set national ambient air quality standards for air pollutants. 42 U.S.C. § 7409. States are responsible for developing plans to implement those standards. § 7410(a)(1). The states' plans, and any revisions, must be approved by the EPA. § 7410(k). As part of the plans, states must establish a permitting program for new polluters in areas that don't meet the EPA's standards. §§ 7502(c)(5), 7503(c). Those programs must ensure any emission increases be offset by corresponding emission reductions. § 7503(c).

The South Coast Air Quality Management District ("the District") regulates the air quality in the South Coast Air Basin and the Riverside portions of the Salton Sea Air Basin. Cal. Health & Safety Code § 40412; Cal. Code Regs. tit. 17, §§ 60104, 60114. Because these areas don't meet the EPA's air quality standards, the District is responsible for developing a plan that ensures new emission increases are offset by reductions. *See* 40 C.F.R. § 81.305; 42 U.S.C. § 7410(a)(1). When reductions exceed increases, the excess reductions take the form of "credits," which are traded in an open market to entities seeking to meet their offset requirements. The District maintains a stock of these credits in an internal bank for distribution to entities like schools and hospitals.

In 2009, California passed Assembly Bill 1318, which requires the District to transfer credits to a soon-to-be completed power plant named Sentinel. 2009 Cal. Legis. Serv. 3402-07 (West). Since the Bill changed the state plan, the District sought the EPA's approval.

Petitioners challenge the EPA's final rule approving the District's revision. *See* Revision to the South Coast Portion of the California State Implementation Plan, CPV Sentinel Energy Project AB 1318 Tracking System, 76 Fed. Reg. 22,038 (Apr. 20, 2011). They allege that the EPA committed procedural errors during the rulemaking process and that the substance of the revised state plan violates the Clean Air Act.

## Analysis

**[1]** We review agency action to see if it's arbitrary and capricious. *Sacora* v. *Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010); 5 U.S.C. § 706(2)(A). Here, the EPA has admitted that the reasoning adopted for its final rule was flawed and voluntarily seeks remand. A federal agency may request remand in order to reconsider its initial action. *See, e.g.*, *SKF USA Inc.* v. *United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). That's what the EPA has done here. It seeks to explain on remand

how credits earmarked for Sentinel meet certain regulatory requirements, *see* 40 C.F.R. § 51.165(a)(3)(ii)(C)(1)(i), and to revisit its calculations of the District's available credits.

**[2]** Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith. *SKF USA Inc.*, 254 F.3d at 1029. *Compare Sw. Bell Tel. Co.* v. *FCC*, 10 F.3d 892, 896 (D.C. Cir. 1993) (discussing the court's previous decision to grant the agency's request for a remand) *with Lutheran Church-Mo. Synod* v. *FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (refusing to remand because the agency just wanted to avoid judicial review). Because the EPA has recognized the merits of the petitioners' challenges and has been forthcoming in these proceedings, there is no evidence that the EPA's request is frivolous or made in bad faith. We therefore grant the EPA's request for remand.

**[3]** That brings us to whether we must vacate the EPA's final rule. A flawed rule need not be vacated. *See Idaho Farm Bureau Fed'n* v. *Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *W. Oil & Gas Ass'n* v. *EPA*, 633 F.2d 803, 813 (9th Cir. 1980). Indeed, "when equity demands, the regulation can be left in place while the agency follows the necessary procedures" to correct its action. *Idaho Farm Bureau*, 58 F.3d at 1405. Even though the agency's error was significant in *Idaho Farm Bureau*, we didn't vacate the agency's rule because that could have wiped out a species of snail. *Id.* at 1405-06. Similarly, in *Western Oil and Gas*, we didn't order vacatur because doing so would have thwarted "the operation of the Clean Air Act in the State of California during the time the deliberative process [was] reenacted." 633 F.2d at 813.

**[4]** Whether agency action should be vacated depends on how serious the agency's errors are "and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc.* v. *U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (internal quotation marks omitted).

## I.  Alleged Errors

Petitioners allege two types of errors—procedural and substantive.

### A.  Procedural Errors

During the rulemaking process, the EPA didn't disclose certain documents in the electronic docket or list them in the docket index. According to the petitioners, those failures violated the notice-and-comment requirements of the Administrative Procedure Act. *See* 5 U.S.C. § 553(c).

Agencies must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(c). This means the agency must "identify and make available technical studies and data that it has employed in reaching the decisions to propose particular rules." *Kern Cnty. Farm Bureau* v. *Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal quotation marks omitted).

**[5]** EPA's failure to include all documents in the electronic docket was not an error. The E-Government Act requires online disclosure only "to the extent practicable, *as determined by the agency* in consultation with the Director" of the Office of Management and Budget. E-Government Act of 2002, Pub L. No. 107-347, § 206(d)(2), 116 Stat. 2899, 2916 (2002) (emphasis added). We defer to the EPA on what is practicable to post on its online docket. *See Heckler* v. *Chaney*, 470 U.S. 821, 831-32 (1985) (noting that agencies are better equipped than courts to make certain choices, given their expertise and their superior understanding of their own resources and priorities).

EPA did misstate that all documents in the docket were listed in the index. While this might violate an interested party's right to meaningfully comment, *see* 5 U.S.C. § 553(c),

we need not decide that here. Assuming procedural error, it was harmless as to the petitioners because they had the documents in their possession from earlier proceedings. And, where a party has actual notice and was able to submit its views to the agency prior to the challenged action, no procedural harm is suffered by failure to provide notice. *Cal-Almond, Inc.* v. *U.S. Dep't of Agric.*, 14 F.3d 429, 441-42 (9th Cir. 1993); *see* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error.").

**[6]** Petitioners don't dispute they had the documents in hand; instead, they claim they had no way of knowing which documents the EPA was reviewing. But petitioners knew that all documents weren't listed in the docket index before the comment period ended and they were intimately familiar with the documents at issue. Finally, any disadvantage petitioners suffered can be corrected on remand when they will have an opportunity to comment meaningfully on the documents.

## B.   Substantive Errors

**[7]** Petitioners argue that the EPA violated the Clean Air Act in approving the District's revision to its plan. The EPA concedes that there are flaws in the reasoning adopted for its final rule. Despite its concession, EPA maintains its rule is not arbitrary and capricious and offers new reasoning to support its final rule. But "our review of an administrative agency's decision begins and ends with the reasoning that the agency relied on in making that decision." *Safe Air for Everyone* v. *EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007); *see also SEC* v. *Chenery Corp.*, 318 U.S. 80, 87 (1943). We therefore find that the EPA's final rule is invalid.

That the EPA's final rule is invalid is not the end of the analysis. In considering whether vacatur is warranted, we must balance these errors against the consequences of such a remedy.

## II.  Consequences of vacatur

**[8]** The delay and trouble vacatur would cause are severe. Sentinel is scheduled to come on line in November, but vacatur would pave the road to legal challenges to Sentinel's construction that could well delay a much needed power plant. Without Sentinel, the region might not have enough power next summer, resulting in blackouts. Blackouts necessitate the use of diesel generators that pollute the air, the very danger the Clean Air Act aims to prevent. *See* 42 U.S.C. § 7401(b)(1) (stating the purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air").

Stopping construction would also be economically disastrous. This is a billion-dollar venture employing 350 workers. In addition, vacatur would likely require the California legislature to pass a new bill to allow the District to transfer credits from its internal bank to Sentinel, which would create needless and duplicative legislative effort.

Petitioners claim that failure to vacate the EPA's rule will allow Sentinel to continue construction, and that construction will pollute the air. But the California Energy Commission has already found that Sentinel's construction harms are insignificant with mitigation. And that mitigation doesn't implicate the credits at issue.

**[9]** While we have only ordered remand without vacatur in limited circumstances, if saving a snail warrants judicial restraint, *see Idaho Farm Bureau*, 58 F.3d at 1405-06, so does saving the power supply. Accordingly, we remand without vacatur so that construction of Sentinel may proceed without delay. This does not authorize commencement of Sentinel's operation without a new and valid EPA rule in place.

**REMANDED without VACATUR.**