OREGON NATURAL DESERT ASSO-
CIATION and Audubon Society of
Portland, Plaintiffs,

v.

Ryan ZINKE, Secretary of the Interior,
and Bureau of Land Management,
Defendants,

Columbia Energy Partners, LLC and
Harney County, Intervenor–
Defendants.

No. 3:12–cv–00596–MO

United States District Court,
D. Oregon,
PORTLAND DIVISION.

Signed 04/18/2017

David H. Becker, Law Office of David H. Becker, LLC, Portland, OR, Laurence J. Lucas, Kristin F. Ruether, Boise, ID, Peter MacNamara Lacy, Oregon Natural Desert Association, Portland, OR, for Plaintiffs.

Dedra S. Curteman, Department of Justice, Washington, DC, Ty Bair, United States Department of Justice, Washington, DC, for Defendants.

Jonathan M. Norling, Lovinger Norling Kaufmann LLP, Portland, OR, Beth S. Ginsberg, Jason T. Morgan, Stoel Rives, LLP, Seattle, WA, Dominic M. Carollo, Ronald S. Yockim, Yockim Carollo LLP, Roseburg, OR, Intervenor–Defendants.

OPINION AND ORDER

MICHAEL W. MOSMAN, Chief United States District Judge

This case comes before me on remand from the Ninth Circuit with instructions to vacate the Secretary of the Interior's Rec-

ord of Decision ("ROD") unless I find it advisable that the ROD remain in place. *Or. Nat. Desert Ass'n (ONDA) v. Jewell*, 840 F.3d 562, 575 (9th Cir. 2016). Both parties agree that when deciding to remand to the Bureau of Land Management ("BLM") with or without vacatur, the legal standard comes from *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993). *Allied Signal* provides a two-part test measuring the "seriousness of the order's deficiencies" against "the disruptive consequences of an interim change that may itself be changed." *Id.* at 150–51.

*Allied–Signal*'s first prong requires me to weigh the "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)." *Id.* at 150. I find the "seriousness of the order's deficiencies" should be measured by the effect the error has in contravening the purposes of the statute in question, here the National Environmental Protection Act ("NEPA"). *Cf. Weinberger v. Romero–Barcelo*, 456 U.S. 305, 314–15, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). NEPA mandates certain procedures, which insure informed agency decision-making and meaningful public participation. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 348–49, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).

The first of NEPA's dual purposes is to insure informed decision-making. *Id.* at 349, 109 S.Ct. 1835. Because the Secretary's ROD relied on a faulty baseline analysis, it was, instead, ill-informed. *See ONDA*, 840 F.3d at 570–71; 40 C.F.R. § 1500.1(b) ("NEPA procedures must insure that environmental information is available to public officials ... before deci-

sions are made and before actions are taken."). The potential of winter habitat for sage grouse at the project site was important to the agency, shown by the mitigation measures adopted in the agency's Final Environmental Impact Statement and the Secretary's ROD. *ONDA*, 840 F.3d at 570. Accordingly, the seriousness of BLM's error, with respect to its informed decision-making, weighs in Plaintiffs' favor.

NEPA's second purpose is to insure meaningful public participation. Because BLM did not adequately establish baseline conditions, the public was not able to comment on either the results of the baseline findings or the methodology used in reaching those results. *See ONDA*, 840 F.3d at 571; 40 C.F.R. § 1500.1(b) ("NEPA procedures must insure that environmental information is available to ... citizens[,] ... [and] [t]he information ·must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA."). Defendants argue that if the winter surveys find no sage grouse winter at the project site, they will confirm the ROD's conclusion, and therefore, meaningful public participation will not be impeded. However, this only supplies a partial cure because NEPA, in guaranteeing citizens access to information and the ability to comment, provides for citizen input with respect to the procedures used—i.e., input on the *methods* and not just the *results*. Defendants here assume that it can cure its NEPA error through errorless survey methods, although the only way to achieve such methods is by giving the public notice and comment.[1] Accordingly, the seriousness of BLM's error, with respect to insur-

---

1. Granting Defendants' request would also bring subsequent litigation on the same ROD presently before me, as the Ninth Circuit recently held that a non-NEPA process cannot cure a NEPA violation. *Great Basin Res.*

*Watch v. U.S. Bureau of Land Mgmt.*, 844 F.3d 1095, 1104 (9th Cir. 2016) ("[A] post-EIS analysis—conducted without any input from the public— cannot cure deficiencies in an EIS.").

ing meaningful public participation, weighs heavily in Plaintiffs' favor.

*Allied Signal*'s second prong requires me to weigh the "disruptive consequences of an interim change that may itself be changed." *Allied–Signal*, 988 F.2d at 150–51. According to the Ninth Circuit, economic impacts are, in fact, a worthy consideration with respect to the disruptive consequences of vacatur, and thus, I have fully considered them. *See Cal. Cmtys. Against Toxics v. U.S. Envtl. Prot. Agency*, 688 F.3d 989, 994 (9th Cir. 2012). Defendants argue that the economic impacts of vacatur weigh heavily against such a decision. I disagree. The project is currently operating under a limited notice to proceed where studies for planning and design purposes are permissible, but construction operations are not permissible. Thus, I find Defendants' purported economic impacts do not rise to the level found in *California Communities. See id.* (finding that "[s]topping construction would also be economically disastrous" because it was a "billion-dollar venture employing 350 workers"). However, I do recognize that Defendants will inevitably suffer from limited disruptive consequences stemming from vacatur, and therefore, this prong weighs slightly in Defendants' favor.

### CONCLUSION

I find the seriousness of BLM's error outweighs the disruptive consequences resulting from vacatur. Therefore, I GRANT Plaintiff's Motion to Vacate [91].