**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 30 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, | No.  19-73322 |
| Petitioner, | NLRB No.  28-CA-213783 |
| v. | MEMORANDUM* |
| NATIONAL LABOR RELATIONS BOARD, | |
| Respondent. | |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted December 10, 2020
Pasadena, California

Before:  O'SCANNLAIN and OWENS, Circuit Judges, and KENNELLY,**
District Judge.

Local Joint Executive Board of Las Vegas ("the Union") petitions for review

of a final decision and order of the National Labor Relations Board ("NLRB" or

"the Board").  As the facts are known to the parties, we do not repeat them here

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

except as necessary to explain our decision.

I

The Union challenges the Board's decision to depart from its only-recently-adopted policy requiring employers in "right-to-work" jurisdictions to continue collecting voluntary union dues from employees, and remitting those dues to the union, beyond the expiration of a collective bargaining agreement giving rise to such an arrangement, which is typically known as "dues checkoff." Although we have previously recognized that the Board is free to modify its approach to dues checkoff, *see Local Joint Exec. Bd. of Las Vegas v. NLRB ("LJEB III")*, 657 F.3d 865, 876 (9th Cir. 2011), to withstand scrutiny, the Board's explication of its decision may not be inadequate, irrational, or arbitrary. *See Local Joint Exec. Bd. of Las Vegas v. NLRB* ("*LJEB I*"), 309 F.3d 578, 583 (9th Cir. 2002). The Board remains subject to the scheme of reasoned decisionmaking established by the Administrative Procedure Act. *See id.*; *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (agency action must be the "product of reasoned decisionmaking"). "Under this standard, 'not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational.'" *LJEB I*, 309 F.3d at 583 (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).

2

For an agency's decisionmaking to be rational, the agency must recognize and explain any departures from precedent. "[A]n agency may not depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue,* 926 F.3d 1061, 1085 (9th Cir. 2019) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)) (internal quotation marks omitted); *see also Modesto Irrigation Dist. v. Gutierrez*, 619 F.3d 1024, 1034 (9th Cir. 2010) ("Courts will not assume an agency has engaged in reasoned decision making when it implicitly departs from its prior precedent and provides no explanation for doing so." (internal quotation marks omitted)).

In the decision under review, the Board explained that the doctrine articulated by the Supreme Court in *NLRB v. Katz*, 369 U.S. 736, 743 (1962) prohibits employers from making unilateral changes to terms and conditions of employment during the collective bargaining process. Under *Katz*, terms pertaining to mandatory bargaining subjects that are contained in a collective bargaining agreement are typically continued in effect by operation of law beyond the contract's expiration, until the parties have reached a formal impasse in negotiations toward a new agreement. This doctrine is grounded in an interpretation of § 8(a)(5) of the National Labor Relations Act ("NLRA"), which codifies an employer's obligation to bargain in good faith with the representative

3

selected by its employees.  29 U.S.C. § 158(a)(5).

The Board concluded in this case, however, that dues checkoff is a term of employment that is "uniquely of a contractual nature" and therefore enforceable "only for the duration of the contractual obligation created by the parties."  The Board distinguished such terms of employment that are "rooted in the contract" and "cannot exist in a bargaining relationship until the parties affirmatively contract to be so bound" from aspects of employment that appear in a collective bargaining agreement, but that may exist from the commencement of the bargaining relationship and prior to the contract's formation—such as "provisions relating to wages, pension, and welfare benefits, hours, working conditions, and numerous other mandatory bargaining subjects."  The Board reasoned that dues checkoff belongs in the former category, and is therefore exempt from *Katz's* prohibition on post-contract unilateral changes, such that an employer does not commit an unfair labor practice by suspending dues checkoff after the collective bargaining agreement imposing that obligation has expired.

The Board's dues checkoff rule, although reflecting a change in policy, is not new, and previous iterations of the rule have been litigated before this court. Nevertheless, the Board's "contract creation" rationale for the rule had never been explicitly adopted by a Board majority until this case.

The Union has identified several Board precedents that appear to conflict

4

with the "contract creation" rationale that the Board employed here. In multiple prior cases, the Board has determined that the *Katz* doctrine applies to terms and conditions of employment that are contained in a collective bargaining agreement and that indisputably could not have existed until they were "created" by such an agreement.

In particular, the Board has concluded in prior decisions that, under *Katz*, each of the following obligations contained in a collective bargaining agreement survived the expiration of that agreement: requiring an employer to process grievances short of arbitration, *Am. Gypsum Co.*, 285 N.L.R.B. 100, 100 (1987); *Bethlehem Steel Co.*, 136 N.L.R.B. 1500, 1503 (1962); granting union representatives leave or time off for official union business, *Am. Gypsum*, 285 N.L.R.B. at 102; requiring an employer to hire workers through a union hiring hall, *Sage Dev. Co.*, 301 N.L.R.B. 1173, 1179 (1991); permitting union access to the employer's property, *Frontier Hotel & Casino*, 309 N.L.R.B. 761, 766 (1992); recognizing stewards designated by a union at the employer's workplace, *Frankline, Inc.*, 287 N.L.R.B. 263, 263–64 (1987); granting seniority rights to union officials, *id.* at 264; *Bethlehem Steel*, 136 N.L.R.B. at 1503; contributing to collectively bargained multiemployer trust funds, such as health and welfare funds, pension funds, vacation funds, and apprenticeship funds, *PRC Recording Co.*, 280 N.L.R.B. 615, 618 (1986); *KBMS, Inc.*, 278 N.L.R.B. 826, 849 (1986); *Vin James*

*Plastering Co.*, 226 N.L.R.B. 125, 132 (1976); and, abiding by seniority provisions when recalling workers from layoffs, *Am. Gypsum Co.*, 285 N.L.R.B. at 102 & n.6, *PRC Recording*, 280 N.L.R.B at 636.

The Board was required to grapple explicitly with these apparently contrary precedents in its decision, but it failed do so. *See Altera*, 926 F.3d at 1085; *Modesto*, 619 F.3d at 1034. For the Board's decision to be a reasoned one, the Board must recognize and explain any departure from precedent. It may not simply ignore inconvenient precedents or dispense with them "*sub silentio.*" *Altera*, 926 F.3d at 1085. The Board must explicitly address the prior decisions identified by the Union and provide a coherent account of the relationship between such precedents and the "contract creation" rationale employed in this case. Accordingly, we remand this matter to the Board so that it may address this gap in its decisionmaking process.

## II

Although the reasoning underlying the Board's rule in this case was inadequate, and must be addressed by the Board upon remand, it does not necessarily follow that the Board's rule must be vacated. *See Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) ("A flawed rule need not be vacated."). In deciding whether to remand without vacatur, we consider (1) the seriousness of the errors in the agency's decision and (2) the disruptive

6

consequences of vacatur. *See id.*

Here, the Board will likely be able to cure the identified flaw in its decisionmaking process. The Board will need to grapple explicitly with the contrary precedents that have been cited, to be sure, but the Board has discretion to adopt its preferred rule regarding dues checkoff as long as it provides an explanation for its apparent departure from those precedents. *See LJEB III*, 657 F.3d at 876 ("[T]he Board may adopt a different rule [regarding dues checkoff] in the future provided, of course, that such a rule is rational and consistent with the NLRA").

Moreover, another judicial intervention in the Board's policymaking process with respect to dues check off in "right to work" jurisdictions may be needlessly disruptive. We vacated a previous version of this rule three times, and, since then, the Board has already changed its approach to the issue twice, based on legitimate shifts in regulatory perspective. The Board may change direction yet again. For us to insist here upon an "interim change that may itself be changed," *see Cal. Cmtys.*, 688 F.3d at 992 (internal quotation marks omitted), would, under these specific circumstances, gratuitously undermine the stability of collective bargaining relationships, which the Board has repeatedly identified as an important interest in its policymaking.

Accordingly, we remand to the Board so that it may have an opportunity to

provide an adequate explanation for its approach to dues checkoff by explicitly addressing the precedents cited by the Union that appear to contradict the "contract-creation" rationale used in this case. We do not vacate the Board's dues checkoff rule. The rule articulated by the Board may stand while it undertakes the process of supplementing its reasoning. This panel retains jurisdiction over any subsequent petition for relief.

**PETITION GRANTED, and REMANDED**.