**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MISSION HEN, LLC, | No. 23-4220 |
| *Appellant*, | BAP No. 22-1250 |
| v. | |
| JASON M. LEE; JANICE CHEN; AMRANE COHEN, Chapter 13 Trustee, | OPINION |
| *Appellees*. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Robert J. Faris, William J. Lafferty III, and Frederick Philip
Corbit, Bankruptcy Judges, Presiding

Argued and Submitted November 4, 2024
Pasadena, California

Filed May 22, 2025

Before: Mary M. Schroeder, William A. Fletcher, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge W. Fletcher

# SUMMARY[*]

## Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's opinion affirming the bankruptcy court's order confirming the Chapter 13 plan of debtors Jason Lee and Janice Chen.

Debtors filed for Chapter 13 bankruptcy, scheduling their residence as their sole collateral. They proposed a plan in which they bifurcated and "crammed down" creditor Misson Hen, LLC's junior secured claim to its secured portion. Mission Hen objected to the plan on three grounds, but the bankruptcy court resolved all objections in favor of debtors and confirmed the plan.

The panel held that debtors were eligible for Chapter 13 bankruptcy under 11 U.S.C. § 109(e), which, when they filed for bankruptcy, set a noncontingent, liquidated, unsecured debt limit of $419,275. Even though eligibility should normally be determined by a debtor's originally filed schedules, the bankruptcy court reasonably relied on its own valuation in determining eligibility, given the timing and procedural setting of Mission Hen's objection.

The panel held that the Chapter 13 plan was feasible under § 1325(a)(6), which requires that a debtor "be able to make all payments under the plan and to comply with the plan." Mission Hen argued that the plan was infeasible because debtors' reported monthly income was lower than the amount necessary to meet the payment schedule, but a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

renter's declaration showed that a rent increase would cover the shortfall.

The panel held that the plan was not in violation of § 1322(b)(2), which prohibits modification of liens that are secured only by a debtor's principal residence, because § 1322(c)(2) creates an exception for short-term claims that mature during the term of a Chapter 13 plan. Agreeing with other circuits, the panel affirmed the BAP's conclusion that § 1322(c)(2) allows for the modification of an entire claim, rather than allowing only for modifications of the terms of a payment schedule, such that debtors could bifurcate Mission Hen's claim.

## COUNSEL

Brent D. Meyer (argued), Meyer Law Group LLP, San Francisco, California, for Appellant.

Michael Smith (argued) and Christopher J. Langley, Shioda Langley & Chang LLP, San Gabriel, California, for Appellees.

Jenny L. Doling, J. Doling Law PC, Palm Desert, California, for Amici Curiae National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys.

# OPINION

W. FLETCHER, Circuit Judge:

Debtors Jason Lee and Janice Chen ("Debtors") filed for Chapter 13 bankruptcy, scheduling their residence as collateral. They proposed a plan in which they bifurcated and "crammed down" creditor Mission Hen's junior secured claim to its secured portion. Mission Hen objected to the plan on three grounds: eligibility, feasibility, and legality under 11 U.S.C. § 1322(b)(2). The bankruptcy court resolved all objections in favor of Debtors and confirmed the plan. The Bankruptcy Appellate Panel ("BAP") affirmed. We affirm in turn.

## I. Background

Debtors filed a petition for Chapter 13 bankruptcy on January 26, 2022. They scheduled their residence ("Property") as their sole collateral and listed its current value as $1,045,000. Debtors scheduled a first mortgage for $952,510.26 as a secured claim. That claim is not at issue in this appeal. They scheduled a second mortgage for $465,670.41, held by appellee Mission Hen, as a partially secured claim. The secured portion of Mission Hen's claim was listed as $92,489.74. The unsecured portion was listed as $373,180.17. The proper treatment of Mission Hen's claim is at issue in this appeal.

Chapter 13 authorizes debtors to "cram down" partially secured debt to its secured portion and to pay only the amount of that "allowed secured claim." *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 956–57 (1997); *see* 11 U.S.C. § 1325(a)(5)(B). "The value of the allowed secured claim is governed by § 506(a) of the Code." *Rash*, 520 U.S. at 957.

Section 506(a) provides that the value of personal property securing a claim "shall be determined based on the replacement value of such property as of the date of the filing of the petition." 11 U.S.C. § 506(a)(2).

To support their proposed bifurcation of Mission Hen's claim, Debtors moved for valuation of the Property, asserting that the value of the Property was $1,045,000. Mission Hen objected to the bifurcation, arguing that "the fair market value of the Property" was "significantly greater than Debtors' valuation such that its claim [would be] wholly secured." After an evidentiary hearing on Debtors' motion, the bankruptcy court valued the property at $1,225,000 "[a]s of . . . 1/26/2022," the day that Debtors filed their petition.

Based on the bankruptcy court's valuation, Debtors filed a first amended plan. Under the court's valuation, the Property now secured $265,473.06 of Mission Hen's claim. To address the resulting increase in their monthly payments, Debtors submitted a declaration from Linda Chen ("Linda"), the mother of one of the Debtors. Linda stated that she had lived in Debtors' home and paid $1,200 per month in rent since September 2021. She stated that she and her husband had recently sold their primary residence for $910,000, "nett[ing] the entire purchase price after transaction costs," and were willing to increase monthly rent payments to $4,900 "for the full term of the [Debtors'] plan." Linda attached to her declaration a copy of the closing statement for the recently sold property.

On August 11, 2022, Debtors filed a second amended plan for Mission Hen's claim with the same payment schedule as the first amended plan. Mission Hen then contended for the first time that Debtors were not eligible for

Chapter 13 bankruptcy because, based on their initially proposed valuation of the Property, their total unsecured debt was $442,279.19, greater than the $419,275 debt limit prescribed by 11 U.S.C. § 109(e) at the time. When Debtors filed a third amended plan that was unchanged in relevant respects, Mission Hen again objected. It renewed its argument regarding eligibility and claimed, in addition, that the Plan was infeasible because Linda's declaration was insufficient to prove Debtors' ability to make the payments. Mission Hen further argued that Debtors' plan was in violation of 11 U.S.C. § 1322(b)(2), which prohibits modification of liens that are secured only by a debtor's principal residence. On October 21, 2022, Debtors filed their fourth and final amended plan ("Plan") correcting a typographical error.

After a confirmation hearing on October 27, 2022, the bankruptcy court resolved all of Mission Hen's objections in Debtors' favor. The court found that Debtors were eligible under § 109(e) based on the court's valuation of the Property. Under that valuation, the Property secured enough of Mission Hen's claim to reduce Debtors' total amount of unsecured debt to permit a Chapter 13 bankruptcy. The court also found the Plan feasible because Linda's "declaration, while not great . . . [wa]s enough to satisfy the feasibility" standard. Finally, the court held that although "the statute [wa]s not written very well," "[f]rom the case law it appears pretty clear" that § 1322(b)(2) did not bar the Plan's cramdown of Mission Hen's claim. The court issued an order confirming the Chapter 13 plan.

Mission Hen appealed to the BAP, and the BAP affirmed. *In re Lee*, 655 B.R. 340 (B.A.P. 9th Cir. 2023). We affirm in turn.

## II.  Standards of Review

We review decisions of the BAP de novo.  *In re Cherrett*, 873 F.3d 1060, 1064 (9th Cir. 2017).  We review de novo the bankruptcy court's conclusions of law.  We review its findings of fact for clear error.  *Id.*

## III.  Discussion

We discuss the BAP's rulings in turn.  We agree with all of them.

### A.  Eligibility

When Debtors filed for bankruptcy under Chapter 13, § 109(e) provided, "Only . . . an individual . . . that owe[s], on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $419,275 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e) (2019) (dollar amount adjusted in 2022). The unsecured portion of under-secured debt that has been bifurcated pursuant to 11 U.S.C. § 506(a) "is counted as unsecured for § 109(e) eligibility purposes."  *In re Scovis*, 249 F.3d 975, 983 (9th Cir. 2001).

Based on the Property valuation in Debtors' first filing, $373,180.67 of Mission Hen's claim was unsecured.  Using that valuation of the Property and taking into account other unsecured debt, Debtors reported a total of $488,456.18 in unsecured debt, about $70,000 over the Chapter 13 eligibility limit set by § 109(e).  However, based on the higher valuation of the Property later determined by the bankruptcy court, the amount of unsecured debt was reduced to a level below that limit.

We hold that the bankruptcy court reasonably relied on its own valuation in determining eligibility for Chapter 13.

In *Scovis*, we held that "eligibility should *normally* be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." 249 F.3d at 982 (emphasis added). But as the BAP noted in its opinion, "[t]his case has a feature that is not 'normal.'" *Lee*, 655 B.R. at 352. Mission Hen did not argue ineligibility in its objection to Debtors' plan in the original Chapter 13 petition, the only iteration of the plan that scheduled unsecured debts exceeding the § 109(e) limit. Mission Hen also did not make that argument in its objection to Debtors' first amended plan following the evidentiary hearing on Debtors' motion for valuation and the bankruptcy court's higher valuation. Mission Hen argued that Debtors were ineligible under § 109(e) for the first time in its objection to Debtors' *second amended* plan, seven months after their initial filing, and over two months after the bankruptcy court valued the Property at a level that allowed the plan to qualify for Chapter 13.

We agree with the BAP that given "this procedural setting, it would be absurd to require the court to consider only the earlier-filed schedules and disregard its own finding of value." *Lee*, 655 B.R. at 352. Where, as here, Debtors requested a hearing on valuation when they filed their initial petition and the bankruptcy court thereafter valued the Property as of the initial filing date, it makes sense to use the court's valuation as the basis for an eligibility determination under § 109(e). This is especially true given that Mission Hen admits in its brief to us that it did not earlier raise eligibility concerns for strategic reasons. It chose to wait for the court's valuation before making any objection, hoping that the new valuation would be high enough to secure its entire claim. We conclude in the circumstances of this case that strict adherence to the generally applicable *Scovis* rule

would result in an inaccurate valuation of the Property and undermine the goals of Chapter 13. *See Matter of Pearson*, 773 F.2d 751, 757 (6th Cir. 1985) (noting that "time is of the essence" in Chapter 13 proceedings and that delay in determining eligibility "would do much toward defeating the very object of the statute"); *Scovis*, 249 F.3d at 982 (endorsing *Pearson*'s reasoning on legislative intent).

## B.  Feasibility

Section 1325(a)(6) requires that a debtor filing for bankruptcy under Chapter 13 "be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).  We have held that "[t]he issue whether a plan is feasible . . . is one of fact, which we review under the clearly erroneous standard." *Matter of Pizza of Hawaii*, 761 F.2d 1374, 1377 (9th Cir. 1985).  Mission Hen argues that the Plan is infeasible because Debtors' reported monthly income is lower than the amount necessary to meet the payment schedule.

The Plan outlines the following schedule of monthly payments:  $2,115.99 for three months; $2,240.41 for three months; $5,813.03 for three months; and $6,293.10 for the final fifty-one months.  With Linda's declared increase in rent payments from $1,200 to $4,900, Debtors have a net monthly income of $5,897.74, which Mission Hen does not dispute.  Mission Hen instead notes that this monthly income falls short of the $6,293.10 needed for the final fifty-one months of the Plan.

Mission Hen's objection can be resolved with simple arithmetic.  Linda's declaration states that she will "contribute $4,900 *every month, for the full term of the plan*."  (Emphasis added.)  This includes the first nine months during which payment under the Plan is far lower

than $6,293.10. The extra income paid to Debtors during those months is sufficient to cover the deficit in the remaining fifty-one months. Debtors' net monthly income of $5,897.74 extrapolated over sixty months amounts to $353,864.40, almost exactly equivalent to the total amount due under the Plan, $351,456.39. Linda thus committed to a rent increase that would allow Debtors to make all of payments under the Plan.

### C.  Anti-Modification Provision of § 1322(b)(2)

Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*." 11 U.S.C. § 1322(b)(2) (emphasis added). In *Nobelman v. American Savings Bank*, 508 U.S. 324, 332 (1993), the Supreme Court held that this provision prevented claims secured by a debtor's principal residence from being bifurcated pursuant to § 506(a). Because Mission Hen's claim is secured only by the Property, Debtors' principal residence, it would have been subject to § 1322(b)(2)'s anti-modification provision.

However, a year after the Court's decision in *Nobelman*, Congress amended this section by adding § 1322(c)(2), which provides:

> (c) *Notwithstanding subsection (b)(2)* and applicable nonbankruptcy law . . . .
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, *the*

> *plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.*

11 U.S.C. § 1322(c)(2) (emphases added); *see* Pub. L. No. 103-394, title III, § 301(2), 108 Stat. 4131.  This subsection created an exception to § 1322(b)(2) for short-term claims that mature during the term of a Chapter 13 plan.  Mission Hen's claim is scheduled to mature on January 15, 2027, just before the final payment under the Plan.  It thus falls into the time period for the exception to § 1322(b)(2) carved out by this subsection.  Mission Hen argues, however, that Debtors' bifurcation of its claim does not come within the scope of the exception.

The question before us is whether the phrase "payment of the claim as modified" in § 1322(c)(2) refers to modifications only of the terms of the "payment," or of the entire "claim" itself.  This is an issue of first impression for this court.  If § 1322(c)(2) modifies only the terms of the "payment," a claim falling under the § 1322(c)(2) exception could have its payment schedule modified, but the claim could not be bifurcated and stripped down to its secured portion.  On the other hand, if § 1332(c)(2) modifies the terms of the "claim," it constitutes a complete exception to § 1322(b)(2)'s anti-modification provision, including the prohibition against cramdowns described in *Nobelman*.

The BAP concluded that § 1322(c)(2) allowed for the modification of the entire claim, such that Debtors could bifurcate Mission Hen's claim.  *Lee*, 655 B.R. at 351.  The BAP is in good company.  Courts across the country— including three of our sister circuits—have held that § 1322(c)(2) permits bifurcation of a short-term claim like Mission Hen's.  *See, e.g.*, *Hurlburt v. Black*, 925 F.3d 154,

156 (4th Cir. 2019) (en banc); *In re Paschen*, 296 F.3d 1203, 1209 (11th Cir. 2002); *In re Bartee*, 212 F.3d 277, 295 (5th Cir. 2000); *In re Eubanks*, 219 B.R. 468, 480 (B.A.P. 6th Cir. 1998); *In re Reeves*, 221 B.R. 756, 760 (Bankr. C.D. Ill. 1998); *In re Young*, 199 B.R. 643, 647 (Bankr. E.D. Tenn. 1996). We agree with those courts.

Statutory interpretation "begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Two features of the text of § 1322(c)(2), italicized above, demonstrate that the provision allows for the modification of claims, not merely of payments on the claim.

First, the prefatory clause in § 1322(c)(2), "[n]otwithstanding subsection (b)(2)," indicates that the provision is an exception to § 1322(b)(2). That subsection concerns the "modif[ication] [of] the rights of holder of secured claims" and is not limited to "payments." "Because Section 1322(c)(2) is an express exception to a statute dealing with the full panoply of contractual rights tied to a claim—not just the rights pertaining to payment—Section 1322(c)(2) is reasonably construed as dealing with the modification of claims in their entirety, not just the modification of payments." *Hurlburt*, 925 F.3d at 162–63; *see Paschen*, 296 F.3d at 1207–08.

Second, § 1322(c)(2) specifies that "the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title." 11 U.S.C. § 1322(c)(2). Section 1325(a)(5) governs a Chapter 13 "plan's proposed treatment of secured claims," including proposals to cram down a partially secured claim to "the present value of the collateral." *Rash*, 520 U.S. at 957; *see* 11 U.S.C. § 1325(a)(5)(B). This subsection is thus "the source of a

Chapter 13 debtor's authority to bifurcate secured claims and to 'strip down' the value of the claim to an amount equal to the value of the collateral." *Paschen*, 296 F.3d at 1206 (internal quotation omitted); *see Till v. SCS Credit Corp.*, 541 U.S. 465, 473 (2004) (referring to 11 U.S.C. § 1325(a)(5)(B) as "the cramdown provision"); *Young*, 199 B.R. at 647–48. The reference to § 1325(a)(5) makes clear that § 1322(c)(2) was intended to allow debtors to bifurcate and cram down such claims that are to be paid off before the final payment of the plan is due. *See Hurlburt*, 925 F.3d at 163; *Paschen*, 296 F.3d at 1207–08; *Young*, 199 B.R. at 648–49; *Eubanks*, 219 B.R. at 471–72.

Mission Hen argues that reading § 1322(c)(2) in this way overrules *sub silentio* the Court's holding in *Nobelman*. We disagree. *Nobelman* held that § 1322(b)(2) protected claims secured by a debtor's principal residence from bifurcation and cramdown. *See Nobelman*, 508 U.S. at 332. But § 1322(c)(2), enacted after *Nobelman* was decided, creates an exception to § 1322(b)(2) for claims that are paid off during the life of the bankruptcy plan. Creating a statutory exception to § 1322(b)(2) does not overrule *Nobelman*. Rather, § 1322(b)(2) is called an "exception" precisely because *Nobelman* remains good law within its scope. As the *Hurlburt* court explained, "there would be no need for Congress to exempt mortgages covered by Section 1322(c)(2) from Section 1322(b)(2)'s anti-modification requirement if Congress did not intend for *Nobelman* to continue to set forth the governing construction of Section 1322(b)(2)." *Hurlburt*, 925 F.3d at 165.

## Conclusion

For the foregoing reasons, we affirm the BAP's decision affirming the bankruptcy court's confirmation of Debtors' Chapter 13 Plan.

**AFFIRMED.**