NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 24 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LITTLE MANILA RISING, a nonprofit corporation; MEDICAL ADVOCATES FOR HEALTHY AIR, a nonprofit corporation; SIERRA CLUB, a nonprofit corporation,

        Petitioners,

  v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; MARTHA GUZMAN ACEVES, Regional Administrator of Region 9 of U.S., in her official capacity as Regional Administrator for Region IX of the U.S. Environmental Protection Agency,

        Respondents,

----------------------------------------

SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT,

        Intervenor.

No. 24-6990

Agency Nos. EPA–R09–OAR–2024–0250
EPA–R09– OAR–2024–0301
Environmental Protection Agency

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

On Petition for Review of an Order of the
Environmental Protection Agency

Argued and Submitted November 19, 2025
San Francisco, California

Before: S.R. THOMAS, BRESS, and MENDOZA, Circuit Judges.
Dissent by Judge BRESS.

Various environmental groups ("petitioners") challenge the EPA's final rule granting California a one-year extension for the San Joaquin Valley's "five percent plan," 42 U.S.C. § 7513a(d), to attain the 1997 annual National Ambient Air Quality Standard (NAAQS) for fine particulate matter with an aerodynamic diameter of less than or equal to 2.5 micrometers (PM2.5). *See* 89 Fed. Reg. 91263, 91263–69 (Nov. 19, 2024). We have jurisdiction under 42 U.S.C. § 7607(b)(1). We review "legal questions, including questions of statutory interpretation, *de novo*," without deference to prior agency interpretations. *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (discussing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)). The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

We assume the parties' familiarity with the facts and regulatory framework. We conclude that EPA's extension was permitted under the Clean Air Act (CAA), but that an EPA regulation, 40 C.F.R. § 51.1005(c), nonetheless prohibited the extension. We thus grant the petition and remand to EPA without vacatur.

I

EPA had statutory authority to grant its one-year extension. Specifically, Subpart 1 of the CAA, 42 U.S.C. § 7502(a)(2)(C), (D), permits EPA's extension of the attainment date for a section 189(d) five percent plan when, as here, the State has complied with the designated statutory criteria.

In *Association of Irritated Residents v. EPA*, 423 F.3d 989, 994–95 (9th Cir. 2005) (*AIR*), we addressed whether EPA could rely on Subpart 1's general provisions, *see* 42 U.S.C. § 7502, to set the initial attainment date for a section 189(d) five percent plan, 42 U.S.C. § 7513a(d), for PM-10.[1] The problem we confronted in *AIR* was that Subpart 4 did not itself provide an attainment date for a section 189(d) five percent plan. *AIR*, 423 F.3d at 993. In arguing that EPA could not utilize Subpart 1, the petitioners relied on Subpart 4's attainment date rules in § 7513(e), which enables a five-year extension of the PM-10 deadline before a non-attainment determination—thereafter triggering § 189(d) and the requirement of five percent annual reductions in PM-10. *Id.* at 994–95. The petitioners contended that the Subpart 4 attainment date rules in § 7513(e) were "exclusive," which would therefore "leave the EPA with no ability to set a new date at all once a PM-10 area has missed its deadline." *Id.*

---

[1] While Subpart 4 addresses PM-10, a different pollutant, courts have interpreted this subpart to cover PM2.5. *See NRDC v. EPA*, 706 F.3d 428, 436 (D.C. Cir. 2013).

We rejected petitioners' position, holding that EPA could utilize the general provisions in Subpart 1 to provide the attainment date for a section 189(d) five percent plan. *Id.* at 994–95. We explained that "there are essentially two statutory pathways through which PM-10 attainment deadlines may be changed"—those found in the generally applicable Subpart 1 provisions, *see* 42 U.S.C. § 7502, and those set forth in PM-specific Subpart 4, *see* 42 U.S.C. §§ 7513, 7513a. *Id.* at 993. We reasoned that because "[n]o language in Subpart 4 prohibits the EPA's application of the general provisions to change attainment deadlines," "the statutory scheme authorizes the EPA to look to [§ 7509(d) in Subpart 1] in order to set a new attainment deadline once the EPA has determined that a PM-10 area has failed to attain the standard." *Id.* at 994–95. We concluded that EPA's interpretation, "looking to the general provisions to provide an alternative path for setting a new PM-10 attainment deadline, is the correct interpretation of the statutory provisions that, when viewed in the full statutory context, are not ambiguous." *Id.* at 995.

Under the logic of *AIR*, because Subpart 4 does not set attainment dates or extensions for five percent plans, Subpart 1's generally applicable provisions furnish the basis for both attainment dates and extensions, including the one-year extension in 42 U.S.C. § 7502(a)(2)(C). Just as "[n]o language in Subpart 4 prohibits the EPA's application of the general provisions to change attainment deadlines," *AIR*, 423 F.3d at 994, no language in Subpart 4 prohibits the Subpart 1 general extension

4                                                                    24-6990

periods from applying to five percent plan attainment deadlines. *See also* 42 U.S.C. § 7502(a)(2)(D) ("This paragraph shall not apply with respect to nonattainment areas for which attainment dates are *specifically provided* under other provisions of this part." (emphasis added)). So EPA's one-year extension of the five percent plan attainment date was permitted under § 7502(a)(2)(C).

## II

Despite the CAA authorizing EPA's one-year extension, EPA's PM2.5 SIP Requirements Rule, 40 C.F.R. § 51.1005(c), unambiguously prohibits the extension. Starting with the text, § 51.1005(c) provides that "[i]f a Serious area fails to attain a particular PM2.5 NAAQS by the applicable Serious area attainment date, the area is then subject to the requirements of section 189(d) of the Act, and, for this reason, the state is prohibited from requesting an extension of the applicable Serious area attainment date for such area." The parties do not dispute that the San Joaquin Valley "fail[ed] to attain [the] particular PM2.5 NAAQS by the applicable Serious area attainment date" of December 31, 2023. Nor do the parties dispute that the San Joaquin Valley is subject to § 189(d) of the CAA with regards to PM2.5. The plain text of the regulation therefore clearly prohibits EPA from granting an extension of the attainment date for a section 189(d) five percent plan.

The CAA's statutory structure, our decision in *AIR*, and the Rule's history cannot change this result because interpreting a regulation "begins with the . . . text,

and ends there as well if the text is unambiguous." *Mission Hen, LLC v. Lee*, 137 F.4th 1008, 1014 (9th Cir. 2025) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)); *see also League of Cal. Cities v. FCC*, 118 F.4th 995, 1015 (9th Cir. 2024) ("Regulations are interpreted according to the same rules as statutes[.]" (citation modified)).  Moreover, we do not defer to the agency's interpretation where, as is the case here, the regulation is unambiguous.  *See Kisor v. Wilkie*, 588 U.S. 558, 574 (2019) ("[A] court should not afford . . . deference [to an agency's interpretation of a regulation] unless . . . the regulation is genuinely ambiguous.").

Because EPA's extension is prohibited under the agency's regulations, we grant the petition for review.  However, we recognize the ongoing regulatory efforts concerning the NAAQS attainment in the San Joaquin Valley.  *See, e.g.*, 90 Fed. Reg. 31906 (July 16, 2025) (proposed attainment finding for the San Joaquin Valley area for the PM2.5 standard by the December 2024 extended attainment date based on air quality monitoring from 2022 through 2024).  Under these circumstances, we remand the extension action to EPA without vacatur, to permit further agency action consistent with this decision.  *See Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012).

**PETITION FOR REVIEW GRANTED; REMANDED.**[2]

---

[2] We decline to award costs of litigation under 42 U.S.C. § 7607(f).

*Little Manila et al. v. EPA*, No. 24-6990

BRESS, Circuit Judge, dissenting:

I agree that the one-year extension for the San Joaquin Valley section 189(d) five percent plan was permitted under Subpart 1 of the Clean Air Act (CAA). I therefore agree with the reasoning in Part I of the court's disposition. But I disagree with the majority's counterintuitive conclusion, set forth in Part II, that the EPA nonetheless tied its hands in PM2.5 SIP Requirements Rule, 40 C.F.R. § 51.1005(c), thereby prohibiting through its own regulation Subpart 1 extensions that the statute allows it to confer.

I appreciate the majority's focus on the final clause of § 51.1005(c), providing that once an area is "subject to the requirements of section 189(d) of the Act," "the state is prohibited from requesting an extension of the applicable Serious area attainment date for such area." *Id.* That clause, however, must be read in context and in view of the CAA's structure as a whole. *See, e.g.*, *Kisor v. Wilkie*, 588 U.S. 558, 576 (2019); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Read in that light, § 51.1005(c) does not prohibit extensions under Subpart 1, so I would deny the petition for review.

Based on *Association of Irritated Residents v. EPA*, 423 F.3d 989, 994–95 (9th Cir. 2005) (*AIR*), when EPA incorporated Subpart 1's provisions addressing attainment dates for five percent plans, *see* 40 C.F.R. § 51.1004(a)(3), it is more

1

reasonable to conclude that EPA also incorporated Subpart 1's extension provision, because the extensions work hand in glove with the attainment dates. *See, e.g.*, 42 U.S.C. § 7502(a)(2)(A), (C) (providing attainment dates and extensions for nonattainment areas in Subpart 1). As EPA explained in granting the November 2024 extension, Subpart 1's "section [7502] controls for purposes of setting an attainment date for a plan required under CAA section 189(d) because the provisions of subpart 4, including section [7513](c), do not specifically provide authority for establishing attainment dates for 189(d) attainment." 89 Fed. Reg. 91263, 91266 (Nov. 19, 2024). Therefore, § 51.1005(c) only "prohibits a state subject to section 189(d) from applying for an extension of the applicable attainment date in excess of that which is permitted for an attainment plan under section 189(d)." *Id.* That is, an "area subject to section 189(d) may not apply for an extension of the applicable attainment date under section [7513](e)." *Id.*

While EPA perhaps could have been clearer in its regulation, the language in question in § 51.1005(c), properly understood in context, merely clarifies that a five percent plan cannot receive the longer extensions in Subpart 4; it does not mean that the other extensions in Subpart 1 are disallowed. Section 51.1005(c) provides that the state cannot seek "an extension of the *applicable* Serious area attainment date for such area." 40 C.F.R. § 51.1005(c) (emphasis added). That "applicable" date is a reference to the date established in Subpart 4, because a serious nonattainment area

2

only becomes "subject to CAA section 189(d)," *id.*, if it fails to meet the Subpart 4 requirements by the required date. The regulation is therefore a prohibition against further Subpart 4 extensions, not a disallowance of any extensions that Subpart 1 may otherwise allow.

This is supported by EPA's reasoning when it promulgated the PM2.5 SIP Requirements Rule. EPA noted then that "neither CAA section 189(d) nor other sections in subpart 4 explicitly establish or provide the authority to establish a new attainment date for the area," so "EPA must look to other provisions of part D of the CAA to provide authority for a new attainment date," which are located in Subpart 1, specifically 42 U.S.C. §§ 7502(a)(2) and 7509(d)(3). 81 Fed. Reg. 58010, 58106 (Aug. 24, 2016). EPA thus fairly indicated that all of § 7502(a)(2) would be applied to section 189(d) five percent plans, which includes the extension provision in § 7502(a)(2)(C). *See id.* (explaining that "the EPA must establish a new attainment date according to the provisions of CAA section [7509](d)(3) and [7502](a)(2).").

Rather than blanketly prohibit extensions as the majority suggests, the text of 40 C.F.R. § 51.1005(c) incorporates Subpart 1's generally applicable extension provision through its reference to "the requirements of section 189(d) of the Act." In light of *AIR*, being "subject to the requirements of section 189(d) of the Act" includes being subject to Subpart 1 and 42 U.S.C. § 7502(a)(2). The last sentence of § 51.1005(c) is therefore better understood to clarify that such areas cannot

3

request extensions under Subpart 4 because only Subpart 1 supplies the attainment dates and extensions at that point in the compliance process. *See* 40 C.F.R. § 51.1005(c) (once "subject to the requirements of section 189(d) of the Act," "the state is prohibited from requesting an extension of the applicable Serious area attainment date for such area"); *see* 42 U.S.C. § 7513(e) (only providing extensions for serious areas before a non-attainment determination).

Common sense and the CAA's overall structure likewise support EPA's interpretation. It is doubtful that EPA would incorporate Subpart 1's attainment dates, while simultaneously (and without explanation) prohibiting extensions that are statutorily associated with the date. As observed earlier, attainment dates and extensions are often paired throughout the CAA. *See, e.g.*, 42 U.S.C. §§ 7502(a)(2), 7513(c)–(e). If EPA had wanted to affirmatively prohibit extensions that the statute allows, something in the regulatory history would have made that intent apparent.

In any event, to the extent that the majority's reading of 40 C.F.R. § 51.1005(c) is plausible, the regulation is at least "genuinely ambiguous" under *Kisor*. *See Kisor*, 588 U.S. at 573. "*Kisor* instructs that courts owe deference to an agency's interpretation of its own rules where (1) the regulation is 'genuinely ambiguous,' (2) the interpretation is 'reasonable,' and (3) the interpretation is entitled to 'controlling weight.'" *United States v. Yafa*, 136 F.4th 1194, 1197 (9th Cir. 2025) (quoting *Kisor*, 588 U.S. at 574–79). For the reasons already articulated—based on text, context,

and our prior decision in *AIR*—§ 51.1005(c) is at minimum genuinely ambiguous on the question before us. It is not unambiguous in petitioners' favor. And the agency's interpretation is also reasonable, in that it "come[s] within the zone of ambiguity [we] ha[ve] identified after employing" the standard tools of construction. *Kisor*, 588 U.S. at 576.

"[T]he character and context of the agency interpretation" would also entitle it to some weight. *Id.* "While this inquiry 'does not reduce to any exhaustive test,' *Kisor* instructs courts to consider whether the interpretation (1) constitutes the agency's 'official position, rather than any more ad hoc statement not reflecting the agency's views,' (2) implicates the agency's 'substantive expertise,' and (3) reflects the agency's 'fair and considered judgment.'" *Yafa*, 136 F.4th at 1199 (quoting *Kisor*, 588 U.S. at 576–79).

In this case, EPA's interpretation constitutes the agency's "official position" because it comes from EPA's notice and comment rulemaking. *See* 89 Fed. Reg. at 91266. And it implicates EPA's substantive expertise because the extension involves EPA's statutory authority to set and oversee ambient air quality standards and the complicated rules for attainment deadlines. *Kisor*, 588 U.S. at 577–78. Finally, EPA's reading reflects its "fair and considered judgment," *id.* at 579 (citation omitted), because EPA's interpretation is consistent with *AIR* and EPA's longstanding position that five percent plan deadlines are subject to Subpart 1, specifically 42

5

U.S.C. §§ 7502(a)(2) and 7509(d)(3).  *See* 89 Fed. Reg. at 91266 & n.42; 81 Fed. Reg. at 58106.  EPA's interpretation therefore does not reflect a "'convenient litigating position' or '*post hoc* rationalizatio[n] advanced' to 'defend past agency action against attack.'"  *Kisor*, 588 U.S. at 579 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)).

In sum, 40 C.F.R. § 51.1005(c) does not prohibit an extension that the CAA allows EPA to confer.  I respectfully dissent.